**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VALERIA RILEY,

            Plaintiff,

v.                                          Case No. 3:17-cv-727-J-34PDB

THE GOODYEAR TIRE AND RUBBER
COMPANY,

            Defendant.
_____/

# **O R D E R**

**THIS CAUSE** is before the Court on The Goodyear Tire & Rubber Company's [Corrected] Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 40; Motion), filed on July 5, 2019.[1] Plaintiff Valeria Riley filed a response in opposition to the Motion on July 19, 2019. See Plaintiff's Memorandum in Opposition to Defendant The Goodyear Tire & Rubber Company's Corrected Dispositive Motion for Summary Judgment (Doc. 43; Response). With leave of Court, see Order (Doc. 46), Goodyear filed a reply in support of its Motion on August 26, 2019. See Defendant's Reply to Plaintiff's Memorandum in Opposition to Goodyear's Dispositive Motion for Summary Judgment (Doc. 49; Reply). Accordingly, this matter is ripe for review.

---

[1] This "Corrected" Motion is a redacted version of the brief. An unredacted copy is in the record, under seal, at docket entry 38. See Endorsed Order (Doc. 42) (directing the Clerk of the Court to place the unredacted motion provisionally under seal); see also The Goodyear Tire & Rubber Company's Motion to Strike or Remove Incorrectly Filed Document (Doc. 41). In addition, as authorized by the Magistrate Judge's August 21, 2019 Order (Doc. 48), Goodyear filed Exhibit D to the Motion under seal at docket entry 51.

**I. Standard of Review**

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[2] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II.    Background Facts

This case arises out of a single-car accident which occurred on July 5, 2013, when the driver's-side front wheel of Riley's 2005 Nissan Murano suddenly detached from the vehicle while Riley was driving. Six days prior to the accident, on June 29, 2013, Riley had taken her car to a Goodyear Auto Service Center and had three new tires installed. See Response, Ex. C: January 19, 2018 Deposition of Valeria Riley (Docs. 40-3, 40-4; Riley Dep.) at 149-50, 157; see also Motion, Ex. C. Goodyear service technician Seth James performed the service, replacing three of Riley's tires, including the driver's-side front tire. See Motion, Ex. C; Response, Ex. A: Deposition of William Hoffstetter (Doc. 43-1; Hoffstetter Dep.) at 41-44; see also Response, Ex. B at Interrog. No. 6. Although

the fourth tire on Riley's vehicle was also worn and in need of replacement, Riley could not afford to purchase a fourth new tire at that time. See Riley Dep. at 150, 153-54; Hoffstetter Dep. at 41-42. James signed a Vehicle Inspection Report, stating that he had properly secured the wheels on the vehicle. Se Motion, Ex. C. In addition, as required by Goodyear's "Good-to-Go" policy, Goodyear service manager Houston Crumbley also executed the Vehicle Inspection Report certifying that he had reviewed James' work and confirming that the lug nuts were torqued to the proper specification. Id., Exs. C, D; Hoffstetter Dep. at 41-42, 44. Riley's son Antonio Bell picked up the vehicle from Goodyear and drove it to and from work that same day. See Motion, Ex. F: January 7, 2019 Deposition of Antonio Bell (Bell Dep.) at 18-19. Bell did not notice anything wrong with the vehicle. Id. at 19.

The next day, Riley drove the vehicle and noticed a slight vibration. See Riley Dep. at 141, 164. Believing that the one tire she had not replaced was the cause of the vibration, and unable to afford a fourth "new" tire at that time, Riley attempted to take her vehicle to a "used tire" shop for a replacement tire. See id. at 141-42, 164-67. However, the "used tire" shop was closed that day. Id. at 164. Riley continued to drive her vehicle the remainder of the week and would hear "a little vibrating" but "it wasn't that bad." Id. at 164-68. Riley could not recall at her January 19, 2018 deposition how often she drove the car that week, testifying: "It wasn't—it wasn't that much. I don't know. I don't know." Id. at 168. Riley describes driving the car "around in the neighborhood, going to the store, go to Walmart on 103rd or get groceries, different areas around the area so that—I didn't ever drive far, me myself. I always just go where I had to go at." Id. at 168. Riley also maintains that she was the only person who drove her car in the week that followed the

service appointment at Goodyear. Id. at 167. When defense counsel asked Riley's son if he drove the vehicle again after picking it up from Goodyear, Bell answered "I'm pretty sure I have. Probably back to work the next day. I don't know. I'm just guessing." See Bell Dep. at 19. When asked how often he used the car that week, Bell testified "If I use it, it would be just going to work." Id. at 21. Bell further testified that it was "possibl[e]" his other siblings or someone else drove the vehicle that week, but "[f]or sure, I can't tell you. I don't know." Id. at 22-23. Notably, documentation of the car's odometer reading from the service visit and post-accident repairs indicate that the vehicle traveled 735 miles in the six days before the accident. See Motion, Exs. C and H.

On Friday, July 5, 2013, the day of the accident, Riley was driving the car on the expressway when she decided to exit because the vibrations had increased and the vehicle was "shaking real bad" such that she "had to have two hands on the steering wheel." See Riley Dep. at 164, 177-79, 187. After exiting the expressway, Riley made an initial turn and heard a squealing noise. See id. at 181-82. As she proceeded to navigate home on back roads, driving about 15-20 miles per hour, Riley made a right turn, heard a boom, and the car went down. Id. at 181-84. According to Riley, "when it went down and it made that boom, like, that's when my car—there wasn't no tire on there—the car hit the pavement--. . . ." Id. at 182-83. Riley's driver's-side front wheel had separated from the vehicle, causing the side of the vehicle to drop and slide to a halt, digging into the pavement. Id. at 144, 169, 185, 192-93. According to Riley, she looked in the mirror and saw her tire flying through the air and into the woods. Id. at 196-97. Riley contacted the Goodyear store and told them what happened. Id. at 207. Two Goodyear employees came to the scene and one of them retrieved the tire from the woods.

Id. at 144, 211-13.  According to Riley, "[t]here wasn't nothing wrong with the tire.  It was just the lug was gone."  Id. at 144.  Goodyear sent a tow truck and had the car towed to its store.  Id. at 144, 207, 218.  The tow truck driver placed the wayward wheel on the tow truck with the car.  Id. at 144, 213-14.  After the initial tow to the Goodyear service center, Riley's car was later towed elsewhere for repairs and ultimately, her insurance paid for the car's repairs.  Id. at 218-19.  Riley went to the hospital the morning after the accident and asserts that, as a result of the accident, she suffered a torn muscle in her right shoulder, as well as other injuries to her head, neck, chest, hip, leg.  See id. at 231, 235-37, 270-75.

### III.     Summary of the Arguments

In the Motion, Goodyear asserts three arguments in support of summary judgment.  First, Goodyear argues that Riley fails to present any evidence "through expert testimony or otherwise, that Goodyear breached its duty of care."  See Motion at 8.  Goodyear maintains that Riley cannot establish that Goodyear breached its duty of care because: 1) the accident occurred six days after the tire change, 2) the vehicle traveled 735 miles before the accident, 3) Riley does not explain or provide any details regarding how the vehicle accrued 735 miles in those six days, and 4) Riley fails "to provide any evidence or expert opinion that Goodyear was negligent."  Id. at 8-9.  According to Goodyear, "[t]hese factors are sufficient to preclude an inference of negligence against Goodyear in such a way that outweighs all contrary or opposing inferences."  Id. at 9.  Second, Goodyear contends that Riley fails to establish that Goodyear's tire change was the proximate cause of the accident.  See id. at 10-11.  Goodyear argues that the six days and 735 miles traveled between the service appointment and the accident, and the

"complete lack of evidence or explanation of what happened to the vehicle during this time," breaks the causal connection between "the alleged negligent act and the injury to the plaintiff." Id. at 11. Goodyear also speculates that "any number of people may have had access to this vehicle during these six days," and that it is "unknown what else they may have done with the vehicle after it left the Service Center." Id. As such, Goodyear asserts that Riley has "failed to show that Goodyear's alleged breach proximately caused her alleged injury." Id. Last, Goodyear maintains that Riley's case is premised on an impermissible stacking of inferences. Id. at 11-17. According to Goodyear, any inference that Goodyear breached its duty of care is "negated" by the Vehicle Inspection Report which documents that Goodyear's employees complied with the "Good-to-Go" policy when they serviced Riley's vehicle. See id. at 16, Exs. C, D.

Riley responds that the detachment of the lug nuts and wheel is sufficient evidence of Goodyear's negligence because lug nuts and wheels do not, by their nature, become dislodged if they are properly affixed. See Response at 4. Riley maintains that "Goodyear's removal of the wheel six days before its detachment and [Riley's] normal driving during that time, and in the absence of some sort of foul play not argued to have occurred here, the detachment of the wheel is proof that Goodyear did not property [sic] reattach the wheel . . . ." Id. at 4-5. According to Riley, "there is no other inference as to the cause of the clean detachment of a car wheel fastened by lug nuts other than Goodyear's failure to properly fasten them," and "the existence of any such counter inference would merely present a question for the jury at trial." Id. In addition, Riley asserts that she need not present expert testimony because "the failure of the work—the proper tightening of lugnuts [sic]—is a matter of common sense." Id. at 5.

**IV. Analysis**

Although Riley's counsel fails to identify the relevant legal doctrine or cite the applicable legal authority, Riley's arguments are plainly premised on the rule of evidence known as res ipsa loquitur, meaning "the thing speaks for itself." This doctrine "'permits, but does not compel, an inference of negligence under certain circumstances.'" See McDougald v. Perry, 716 So. 2d 783, 785 (Fla. 1998) (quoting Marrero v. Goldsmith, 486 So. 2d 530, 531 (Fla. 1986)).[3] The Florida Supreme Court has explained the doctrine as follows:

> "It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control."

McDougald, 716 So. 2d at 785 (quoting Marrero, 486 So. 2d at 531). Although res ipsa loquitur applies only in "rare instances," the Florida Supreme Court recognized in McDougald that the doctrine "is particularly applicable in wayward wheel cases." Id. at 785-86 (citing Cheung v. Ryder Truck Rental, Inc., 595 So. 2d 82 (Fla. 5th Dist. Ct. App.

---

[3] Riley's counsel argues that the wheel's separation from the vehicle is "direct evidence" of Goodyear's negligence, "without inference or presumption." See Response at 4-5. This is incorrect. Direct evidence of negligence, for example, would be a witness who could testify that he saw James attaching the wheel to Riley's vehicle and observed that he failed to tighten all the lug nuts. Riley has come forward with no such evidence. Instead, Riley is asking the Court to infer that Goodyear must have improperly fastened the wheel to the vehicle from the fact that the wheel separated, intact, from the vehicle six days later. Stated another way, Riley's argument is that wheels do not detach themselves from cars absent negligence, and that, because the wheel was in Goodyear's exclusive control at the time it was secured on the vehicle, Goodyear is the probable negligent actor. This is a classic res ipsa loquitur argument. See McDougald, 716 So. 2d at 785; Tamiami Trail Tours, Inc. v. Locke, 75 So. 2d 586, 588 (Fla. 1954); Yarbrough v. Ball U-Drive Sys., 48 So. 2d 82, 83-84 (Fla. 1950). As such, the Court will analyze whether Riley may rely on this rule of evidence to establish Goodyear's negligence.

1992)); see also Neace v. Laimans, 951 F.2d 139, 141 (7th Cir. 1991) ("In general, a wheel detachment is a hornbook res ipsa loquitur situation.").

Although "Florida law governs the application of the doctrine of res ipsa loquitur," this Court must apply "'federal law to test the sufficiency of the evidence to justify [a] res ipsa loquitur charge.'" See Hancock v. Wal-Mart Stores East, L.P., 487 F. App'x 545, 546 (11th Cir. 2012) (alteration in original) (quoting Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 740 (5th Cir. 1980)).[4] Riley may rely on this doctrine only "'if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present.'" Hancock, 487 F. App'x at 546 (quoting Kicklighter, 616 F.2d at 740). Under Florida law, Riley must establish the following three elements: "1) 'direct proof of negligence is wanting'; 2) the instrumentality that caused the injury was under the exclusive control of the defendant; and, 3) the injury 'would not, in the ordinary course of events, have occurred, without negligence on the part of' the defendant." Id. (quoting McDougald, 716 So. 2d at 785).

Although Riley misunderstands the nature of her evidence as noted above, see supra note 3, there is no direct proof of negligence in this case, as Goodyear correctly acknowledges, such that the first element is satisfied. See Motion at 8, 11-12; compare Hancock, 487 F. App'x at 546-47 (describing direct evidence of negligence sufficient to dispel the need for the res ipsa loquitur inference). As to the third element, the only

---

[4] As such, Goodyear's reliance on the Florida law rule against "stacking" inferences is misplaced. See Berbridge v. Sam's East, Inc., 728 F. App'x 929, 932 (11th Cir. 2018) ("Because a federal standard governs our assessment of whether an inference is allowable, we do not apply state-law rules against 'pyramiding' or 'stacking' inferences."); Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) ("According to federal law there is no prohibition against pyramiding inferences; instead all inferences are permissible so long as they are reasonable."); but see Collins v. Marriott Int'l, Inc., 749 F.3d 951, 958-59 (11th Cir. 2014) (analyzing whether the plaintiff in a negligence case relied on an impermissible stacking of inferences).

evidence in the record is that Riley's front wheel detached from the vehicle intact under normal driving conditions.  See Riley Dep. at 144.  Similar to McDougald, this is the type of accident which, "on the basis of common experience and as a matter of general knowledge, would not occur but for the failure to exercise reasonable care by the person who had control of the [injury-causing instrumentality.]"  See McDougald, 716 So. 2d at 786 ("[C]ommon sense dictates an inference that . . . a wheel on a truck's axle will stay with the truck unless there is a failure of reasonable care by the person or entity in control of the truck.").  As this is a matter of common-sense, expert testimony on the issue is not required.  Id. at 785-86; see also Williams v. Hollywood Chrysler Plymouth, Inc., 541 So. 2d 1195, 1196-97 (Fla. 3d Dist. Ct. App. 1988).  Thus, the Court focuses its analysis on the second element—the question of "exclusive control."

Generally, "exclusive control" requires a showing that "'the thing causing the injury was so completely in the control of the defendant that, in the ordinary course of events, the mishap could not have occurred had there been proper care on the defendant's part.'" See Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So. 2d 1339, 1342 (Fla. 1978) (quoting Schott v. Pancoast Props., 57 So. 2d 431, 432 (Fla. 1952)).  Plainly, as Goodyear had relinquished control of the vehicle six days prior to the accident, it cannot be said that the vehicle was "completely in the control" of Goodyear when the accident occurred.  Nevertheless, in Goodyear Tire, the Florida Supreme Court recognized "that there are exceptions to the exclusive control requirement in Florida," noting exploding bottles and the mechanical failure of a rented vehicle as two examples.  Id. at 1342-43 n.9 (citing Starke Coca-Cola Bottling Co. v. Carrington, 32 So. 2d 583, 585 (Fla. 1947) and Yarbrough v. Ball U-Drive Sys., Inc., 48 So. 2d 82 (Fla. 1950)).  In such cases, the "critical

point of time" in assessing exclusive control is "the time of the probable negligence—not the time of the injury." See Nelson v. Ford Motor Co., 469 F.2d 261, 262 (5th Cir. 1972) (citing Holman v. Ford Motor Co., 239 So. 2d 40, 44 (Fla. 1st Dist. Ct. App. 1970) and Dement v. Olin-Mathieson Chem. Corp., 282 F.2d 76, 81 (5th Cir. 1960))[5]; see also Tamiami Trail Tours, Inc. v. Locke, 75 So. 2d 586, 588 (Fla. 1954) (explaining that where a tractor uncoupled from a trailer, and there was no defect in the equipment, "the search for the cause of the accident . . . must therefore be focused upon the coupling process, which was accomplished by the defendant at a time when the entire instrumentality was within his exclusive control"); Fla. Civil Jury Instr. 401.7 (instructing that a jury may infer negligence where the item "causing the injury was in the exclusive control of (defendant) at the time the negligent act or omission, if any, must have occurred and that the [item], after leaving (defendant's) control, was not improperly used or handled by others or subjected to harmful forces or conditions").

In these cases, a plaintiff must make an affirmative showing that "due care was used in the handling of [the injury-causing item] after it . . . left the possession and control of the manufacturer before the rule of res ipsa loquitur will be applicable . . . ." See Groves v. Fla. Coca-Cola Bottling Co., 40 So. 2d 128, 130 (Fla. 1949). Nevertheless, "the law does not require that the injured person eliminate each and every remote possibility of injury to the [item] up to the time of the [accident]." Id. Rather, "[i]t is enough if the evidence is such as to permit a reasonable inference in light of all the circumstances that the [item] was not accessible to extraneous harmful influences after it left the possession

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

of the [defendant] and that it was handled in a reasonably careful manner by the injured person and others who may have had reason to move or touch it." Id.; Nelson, 469 F.2d at 262-63 ("[T]he application of the doctrine of res ipsa loquitur does not require the injured person to obviate each and every remote possibility of injury."); see also Wagner v. Assoc. Shower Door Co., 99 So. 2d 619, 620-21 (Fla. 3d Dist. Ct. App. 1958) ("The Supreme Court of Florida has recognized that there are cases when the inference of negligence by the defendant may arise even though there is the possibility of intervening causes." (citing Groves, 40 So. 2d 128)).

Significantly, Florida courts have also applied this exception in certain cases involving defective vehicles. See Goodyear Tire, 358 So. 2d at 1343 n.9. For example, in Yarbrough, the plaintiff's husband was killed while riding in a rental truck when the forward end of the drive shaft suddenly detached, causing the truck to turn over multiple times, pinning him underneath. See Yarbrough, 48 So. 2d at 83. Notably, the accident occurred after the plaintiff had delivered a load of azalea plants to a customer in Macon, Georgia and was on his way back to Jacksonville. Id. The Florida Supreme Court reasoned that "when one rents a motor vehicle of standard make . . . and proceeds along a welltraveled [sic] United States highway at a reasonable speed, encountering no unusual depressions in the surface of the road and having no untoward experiences, he has a right to believe that the vehicle will not fall apart in the middle of the road." Id. Although the truck was not in the exclusive control of the defendant at the time of the accident, the Yarbrough court found that res ipsa loquitur applied because the case fell "within the exception to the rule like those instances where injuries have resulted from the explosion of bottles containing carbonic acid gas that had passed from the possession of the vendor

to the possession of the consumer." Id. at 84. In another case, a Florida appellate court found that the doctrine of res ipsa loquitur applied where the plaintiff was injured after the emergency brake on her car failed. See Williams, 541 So. 2d at 1196-97. The plaintiff had previously taken her vehicle to the defendant car dealership on multiple occasions complaining of brake problems. See id. Similarly, in Nelson, the former Fifth Circuit Court of Appeals affirmed the application of res ipsa loquitur under Florida law in a case against Ford Motor Company where the plaintiff was injured in a single vehicle accident "allegedly result[ing] from the failure of a bearing on the left rear axle" of his truck. See Nelson, 469 F.2d at 262-63. The court found that the trial court properly instructed the jury on the res ipsa loquitur doctrine despite Ford's argument that "the plaintiff's truck at one time or another might have been driven by the plaintiff's wife or son." Id. at 262.

Here, although Goodyear did not have exclusive control of the vehicle at the time of Riley's injury, Goodyear did have exclusive control at the time of the probable negligence—when the wheel was affixed to the vehicle. Moreover, Riley testified that in the intervening week she was the only one who drove the car and she drove it "around in the neighborhood, going to the store, go to Walmart on 103rd or get groceries, different areas around the area so that – I didn't ever drive far, me myself. I always just go where I had to go at." See Riley Dep. at 167-68. Riley's son testified that he does not recall if he drove the car that week, but if he did it was only to work, and that he does not know if anyone else drove the car. See Bell Dep. at 21-23. Thus, viewing the evidence in the light most favorable to Riley, the Court is satisfied that Riley has presented sufficient evidence from which a rational juror could conclude that, since leaving Goodyear's control, she handled the car in a normal and reasonably careful manner. Although Goodyear

speculates that Riley's testimony cannot account for the 735 miles on the odometer, and asserts that it is possible someone else used the car in the six days since the car left the service station, Riley is not required to "obviate each and every remote possibility" as to the cause of the accident. See Nelson, 469 F.2d at 262-63. As with the plaintiff in Yarbrough, Riley is entitled to believe that a vehicle driven in the normal and customary manner on city roads will not fall apart in the middle of the road, even after 735 miles. See Yarbrough, 48 So. 2d at 83. Accordingly, the Court finds that Riley may rely on the doctrine of res ipsa loquitur to make a prima facie showing that Goodyear's negligence caused the accident.

In light of the foregoing, Goodyear's argument that it is entitled to summary judgment because Riley cannot satisfy her burden of proof is unavailing. To the extent Goodyear argues that it has rebutted any inference of negligence based on documentation that its employees complied with the "Good-to-Go" policy, see Motion at 16, this merely creates a question of fact for the jury to decide. At this stage in the proceedings, it is enough that Riley has presented sufficient evidence from which a reasonable juror could infer Goodyear's negligence as to the cause of the accident. See Kicklighter, 616 F.2d at 740 ("[A] trial judge can appropriately give the res ipsa loquitur charge if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present." (emphasis added)); see also Holman, 239 So. 2d at 45 ("The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it."). While Goodyear has presented evidence to the contrary, reasonable people may differ as to the balance of the probabilities such that a jury must decide the issue.

Stated another way, viewing the evidence and drawing all reasonable inferences in the light most favorable to Riley, the Court is unable to say that <u>no</u> reasonable juror could find in her favor. Accordingly, Goodyear's Motion is due to be denied. In light of the foregoing, it is

**ORDERED:**

The Goodyear Tire & Rubber Company's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 40) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 21st day of October, 2019.

*MARCIA MORALES HOWARD*
United States District Judge

lc11
Copies to:

Counsel of Record